SAMUEL BRADEEN *versus* AARON BROOKS & *al.*

Where by the contract of sale of timber trees, the property in the trees passes to the vendee subject to a lien created by the contract for the payment of the agreed price thereof, and by its terms the possession was to remain with the vendor until the money was paid or security furnished, the lien is not destroyed by any possession taken by the vendee, authorized by the contract, in the usual course of such business.

If by the contract of sale the vendor of standing trees has a lien on the trees for their price, it will not be lost, should the vendee cut them and convert them into mill logs in manner provided in the contract.

Where there is no fraud, the vendee can transfer no greater rights to a third person by a sale, than he had himself.

THIS was an action of trover to recover about 1300 mill logs marked W. H. It appeared that Joseph W. Haley by contract in writing, agreed to purchase of the plaintiff the standing trees on a lot of land for $350,00, and that he gave his notes to the plaintiff at that time for the purchase money.

The following is a copy of the contract, which was in the handwriting of the plaintiff.

"Know all men by these presents, that I Samuel Bradeen, have this day sold to Woodman Haley, all the pine timber that I own on the east side of Joseph Bradeen cove lot. That is, all the pine timber that is over twelve inches through, two feet from the ground, and suitable to make boards. He is to have one year to take them off, he is to make as little waste as possible in the growth, and the timber is to be holden in said Bradeen's possession until the said Haley shall pay said Bradeen three hundred and fifty dollars or give him such security as may be satisfactory to the said Samuel Bradeen, and the tops are to be left on the ground, only what he, the said Haley, may want to burn for camp wood, while he is hauling the timber.

"The condition of this agreement is, that he, the said Haley, shall pay two hundred dollars by the first of April next, and the remainder within one year from date. All the tops are said Bradeen's, after the logs are hauled. Dated, Waterborough, 7th November, 1840."

That during the following winter, Haley caused the logs to be cut and marked with such mark as he pleased, and did mark them with the mark aforesaid, and caused them to be hauled on to the bank of the Little Ossipee river, on the land of one Earle by his consent. That on the 10th of February, 1841, the said Haley by bill of sale, sold the logs to the defendants and received $20,00 cash in part payment; and the logs were, about the first of April, there surveyed and turned into the river to be floated to a place of manufacture, and that soon after, the defendants paid said Haley for said logs in full by notes and cash, and that the defendants afterwards caused them to be floated to their mills on the Saco river below, for manufacture. It appeared that the plaintiff was present and saw the defendants causing said logs to be surveyed and rolled into the river, and it did not appear that he made any remarks respecting these proceedings, other than is hereafter stated. There was testimony tending to prove, that one of the defendants, on an evening while they were thus at work during the day, stated that the plaintiff had been where they were at work that day, and stated that he had a claim or lien on the logs for $200,00, and that the two other defendants about that time, the first of April, 1841, were informed by the plaintiff of his claim or lien for the purchase money of $350,00, and that they said "they were about to pay Haley $200,00 soon, and were as willing to pay him as Haley, and to secure remainder to him as Haley." It was admitted that plaintiff demanded the logs on the 10th of May, 1841, of the defendants, before the suit was brought.

SHEPLEY J. presiding at the trial, ruled, that the contract between the plaintiff and Haley, conveyed the property in the logs to Haley unconditionally, subject to a lien created by the contract for the payment of the agreed price, and that the plaintiff had not lost his lien by permitting, or not resisting the proceedings before stated, if the jury should be satisfied that those proceedings all took place according to the usual and accustomed course of business in relation to this species of property, which course of business was well understood by all

the parties.  And upon this ruling the defendants consented to be defaulted, subject to the opinion of the Court on their rights.

If this ruling was erroneous the default was to be taken off, and a new trial granted, or such other disposition made of the action, as the Court might adjudge to be legal and just to determine the rights of the parties.

*Bradley,* for the defendants.

The term *lien,* when used by a Judge in a Court of law is to be understood in its legal sense.  2 English C. L. Rep. 330.

Lien is a right in one man to retain that, which is in his possession belonging to another, until certain demands of him, the person in possession, are satisfied.  Such is the definition given by Grose J. in *Hammond* v. *Barclay,* 2 East, 235, and adopted by Justice Story.  Story's Ag. § 352.  Other definitions are given but they do not vary essentially from this. 6 East, 26; 18 Ves. 4; Story's Ag. § 361.  A voluntary parting with the goods will amount to a waiver or surrender of a lien.  Story on Ag. § 367; 6 East, 27; 3 Shepl. 347; 18 Ves. 188.  No lien can be acquired, unless the property on which it is claimed come into the possession of the party claiming it.  *Cowan* v. *Adams,* 1 Fairf. 381; 3 T. R. 119; 2 Scott, 238.

As between Bradeen and Haley, the former never had any possession of the logs.  If he had any possession at any time of any thing on this land, it was of the standing trees, and not of the logs after they were cut.  The cutting, marking and hauling away of the logs by Haley were done with the assent of the plaintiff, who was thereby divested of his possession, if he had any.  He did these things for himself, and not as the agent of the plaintiff.  Haley did every thing he could do to take the entire control and possession of the logs.

There is no usage in this business which can control the general law in relation to liens.  Greenl. Ev. 336, note 4; 2 Mason, 236; 9 Cowen, 116; Story's Ag. § 378.

The plaintiff reserved the right — not of property, for he

had sold it — but the right to retain it, until he was paid or secured. Haley entered, cut and hauled away the logs without dissent or objection on the part of the plaintiff. It was a ceasing to retain or hold possession of the logs, and was equivalent to a delivery of them. If the delivery or permission was conditional, it was incumbent on the plaintiff to show, that it was so. *Leighton* v. *Stevens*, 1 App. 154 ; 6 Cowen, 256. And if not so proved, the delivery will be deemed absolute. By the contract the property passed unconditionally to Haley,. and the defendants are *bona fide* purchasers without notice of the plaintiff's claim.

What is the law applicable to such contracts ?

1. If the sale was for cash, and the property is delivered without insisting upon it, all claim of. the vendor on the property is at an end. *Chapman* v. *Lathrop*, 6 Cowen, 110.

2. If the sale was on time, and for security to be furnished by the vendee, the vendor has a right to hold the property until the security is furnished ; but if he parts with the possession, without the security, and the delivery is not conditional, his claim on the goods is gone, even as against his vendee. 25 Wend. 640 ; 4 Pick. 517 ; 4 Mass. R. 405. The delivery under such circumstances is a waiver of the obligation, and the vendee becomes the absolute owner. 6 Wend. 77 ; Long on Sales, (Rand's Ed.) 450, 275 ; 14 East, 308 ; 3 T. R. 485 ; 3 Shepl. 347.

3. Even if the delivery is conditional, and the vendor unreasonably neglects to claim his security, agreed to be furnished, he waives the condition, and the delivery becomes absolute. 8 Wend. 247 ; 6 Pick. 267 ; 4 Mass. R. 405 ; 8 T. R. 406 ; 1 Shepl. 428 ; 9 Greenl. 79 ; 3 Fairf. 343.

It was contended, that the ruling of the Judge at the trial was erroneous, and that a new trial should be granted.

*Clifford*, for the plaintiff.

Liens generally arise either from express contract, the usages or customs of trade, or from the manner of dealing between the parties. 15 Mass. R. 394 ; 1 B. & Ald. 582. This is a case of lien by express contract, and the rights of the parties

depend upon the terms of the contract of sale. 3 Met. 355; 24 Pick. 204 ; 3 Metc. 9. The signification of lien is variously stated in the books, and does not appear always to have been used in a precise or well defined sense. It is sometimes applied to mortgages, sometimes to pledges or pawns, and sometimes to conditional sales, and perhaps to other cases. A lien is simply a right to possess or retain property until some charge attaching to it is paid or discharged. In general a lien is recognized to exist only when it is connected with the possession, *or the right to possess* the thing itself. 2 Dane, c. 44, art. 1 ; 1 Story's Eq. § 506 ; 2 Story's Eq. § 12, 16 ; Montague on Liens, 1, note a. By the contract in this case, the plaintiff was to retain his ownership of the property until the purchase money was paid or secured. The principle involved in the present case has been settled in this State. *Emerson* v. *Fisk*, 6 Greenl. 200 ; *Waterston* v. *Getchell*, 5 Greenl. 435.

There was a notice of the plaintiff's claim before any delivery over by Haley to the defendants, and before they had paid him for the logs. But if there had been no notice, the purchaser could derive no higher title than the vendor possessed. 1 Johns. R. 471 ; 3 Fairf. 341 ; 1 Fairf. 310 ; 14 Maine R. 77 ; 13 Johns. R. 434 ; 8 Greenl. 181 ; 7 Greenl. 241 ; 17 Mass. R. 110 ; 2 Kent, 324 ; Sug. on Vend. 398 ; 14 Wend. 31 ; 1 Hill, 303 ; 20 Wend. 267.

It is said that the plaintiff's lien has been divested by parting with the possession. It is sufficient that the sale and delivery were both conditional. Haley entered under the contract, and in subordination to it. The possession of Haley was the possession of the plaintiff. 1 Fairf. 381 ; 10 Wend. 318 ; 3 Wend. 280 ; 11 Wend. 77 ; 9 Cowen, 680 ; 5 N. H. R. 286.

If the actual possession of property, on which there is a lien, be impracticable or inconvenient, the special property will vest in the person entitled to such lien without an actual delivery or possession. 12 Mass. R. 300 ; 3 Greenl. 427 ; 5 Greenl. 309 ; 5 Pick. 5 ; 24 Pick. 42. The actual delivery of goods does not of itself transfer an actual ownership in them, but to perfect the title in the vendee, there must be a

Bradeen v. Brooks

consummation of the contract of sale. 17 Mass. R. 611 ; 1 Salk. 113 ; 1 H. Black. 362 ; 13 Mass. R. 87 ; 6 East, 614 ; 7 T. R. 125 ; 4 B. & P. 237 ; 1 Salk. 113 ; 2 Campb. 240 ; 2 H. Black. 316 ; 5 Taunt. 617 ; 13 Johns. R. 434 ; 3 Cowen, 84 ; 2 Johns. R. 17, 418 ; 3 Johns. R. 399 ; 17 Mass. R. 197 ; 3 Greenl. 428 ; 1 Pick. 389. If the possession is consistent with the contract, it does not impair the lien. 8 Taunt. 676 ; 2 Cowp. 432 ; 1 Powell on Con. 37 ; 1 Br. & Bing. 506 ; 13 Maine R. 377. Lien by contract rights depend upon the terms of the contract. Actual possession is not necessary to render a lien valid, if there be a constructive possession. One man may have the actual possession or custody of a chattel, while another has the legal right, or constructive possession. 2 Pick. 512 ; 12 Pick. 81 ; 9 Pick. 347 ; 12 Mass. R. 131 ; 4 B. & Cr. 652 ; 14 Pick. 497 ; 19 Pick. 217 ; 2 Pick. 206 ; 6 Pick. 280. There was no delivery of the property to Haley, and there was no necessity of one back. 24 Pick. 89 ; 12 Pick. 316 ; 1 Story's R. 68 ; 1 Sumn. 73 ; 3 Fairf. 341 ; 9 Greenl. 47 ; Shep. Touch. 118 ; 10 Pick. 582. Where goods are sold to be paid for on delivery, the vendor has a lien. 13 Johns. R. 434 ; 6 Wend. 7 ; 15 Maine R. 349 ; 4 Pick. 449 ; 22 Pick. 535 ; 20 Pick. 280. Where some act remains to be done, and there is no evidence that the parties intended an absolute sale, the property does not pass. 20 Pick. 399 ; 7 Wend. 404 ; 15 Maine R. 320 ; 14 Maine R. 400 ; 11 Pick. 50 ; 9 Pick. 558 ; 2 Paige, 172 ; 1 Paige, 312 ; 8 Pick. 543 ; 6 Cowen, 250 ; 2 Kent, 497 ; 4 Wash. C. C. R. 588 ; 4 Mason, 294 ; 22 Wend. 659 ; 23 Wend. 372 ; 2 Pick. 607 ; 15 Mass. R. 244 ; 5 Johns. R. 261.

Where property is sold and delivered conditionally, the title does not pass until payment is made or the condition is performed ; and if the vendee sells without performance, the first vendor may maintain trover against the last vendee, and this too without demand, or refusal to surrender the same. 19 Maine R. 154, 247 ; 2 Pick. 512 ; 20 Maine R. 391 ; 2 Fairf. 28 ; 8 N. H. R. 325 ; 11 Wend. 80 ; 2 Campb. 335 ; 13 Pick. 294 ; 10 Mass. R. 311 ; 2 Metc. 350 ; 9 Pick. 4. The taking

of a bond, bill, or note, does not affect the rights of the parties. 13 Maine R. 303.

The opinion of the majority of the Court was drawn up by

TENNEY J. — The mill logs in controversy were taken from trees, which were the property of the plaintiff previous to his contract with Haley. By that contract, which was in writing, the timber was sold to Haley to be taken off within one year, he promising to pay the price agreed upon at certain stipulated times. For the plaintiff's security, he was to hold possession till he should be paid or otherwise secured to his satisfaction. Haley cut and took off the timber in pursuance of the contract, marked it as he pleased; and deposited it on the banks of the stream, through which it could be driven to a market, and on land of a third person, whose consent he obtained for the purpose. After all this was done, Haley entered into a contract with the defendants to sell the logs to them, they paying at the time twenty dollars, and agreeing to pay the residue at a future day. For the present inquiry, it is settled, that about the time, that the plaintiff was entitled to his first payment, and the defendants were measuring the logs, where they had been deposited, and were rolling them into the stream, he notified them that he had a claim upon the logs; and that the defendants said, they were about making a payment to Haley, and they were as willing to pay and secure the plaintiff as him; that a demand was made on the 10th of May, 1841; also that all the proceedings took place according to the usual and accustomed course of business in relation to this species of property, which was well known by all the parties.

It is contended by the defendant's counsel, that the plaintiff having interposed no objection to the cutting and marking the timber, and taking the same from the land on which it grew, must be considered as having surrendered the possession, which he reserved the right to retain in the original agreement; and that thereby the sale to Haley became perfect and absolute,

before the latter transferred his rights in the timber to the defendant.

An unconditional contract of sale vests in the purchaser an absolute right immediately ; between the parties, a formal delivery is unnecessary to constitute a sale. But if · by the agreement, possession is to be retained in the vendor, till some condition shall be performed by the vendee, a delivery· either actual or constructive is essential to the completion of the transfer, unless the condition shall be fulfilled. · If by any subsequent understanding expressed or implied, *that* possession is relinquished by the vendor, he cannot afterwards legally regain it ; and the property will pass to the vendee, although the condition be unperformed.

But it often may happen, that the property which is the subject of a conditional sale, may be found in the hands of the purchaser, and the right, which the original owner had under the contract remain unimpared. He does not relinquish his power over the property by a permission to the other party merely to have it in his custody. The latter may borrow it, or be possessed of it as the servant of the other ; or for the purpose of bestowing upon it some labor, not inconsistent with the continuance of the possession which the former owner was entitled to retain. The sale of a chattel may be perfect, excepting that the delivery is withheld until the price shall be paid, and the purchaser may have the entire use by the other's consent, and the sale may not become absolute. In such a case the mere passing of the property into the hands of the vendee, divests the other party of no right, unless it be accompanied with the intention of surrendering the very possession, which it was agreed should remain in him. As in every other contract, the design of the parties is to determine the character and effect of the transaction.

In the contract now under consideration, the property by its terms did not become absolute in Haley. There was a condition to be performed by him, before his title could be perfect. There was a right remaining in the plaintiff, which nothing short of payment of the agreed price, or his own act, could

take away. The trees were not to remain standing, that Haley might derive a benefit from their growth, or a supposed increase in their value, but they were purchased by him, that they might be taken away and manufactured. The removal was made with a view to receive the avails, after payment should be made to the plaintiff. Marking the logs, according to the facts in the case, was in the usual and accustomed manner of treating this kind of property. Hauling them to the banks of the stream was of the same character. Every thing done by Haley in these operations was in pursuance of the intention, and in furtherance of the object of the parties, as clearly indicated by the written contract between them. If the plaintiff had prevented Haley from cutting, marking and removing the trees, it would have defeated the whole object of the latter in the purchase, or subjected him to an earlier payment of the purchase money than was contemplated in the contract. On the other hand, if the acts of Haley without the plaintiff's objection, made the sale absolute, it was taking from the plaintiff the security which by the contract he was entitled to, through the identical acts, which it was agreed in the same contract should be performed.

But it is insisted by the defendant's counsel, that the contract was an unconditional sale of the property, subject to a lien created thereby ; and that the law touching liens is applicable to this case. The term lien is often used without the greatest precision. The legal definition as given by Judge Story in his commentaries on the law of agency, § 352, is "a right in one man to retain, that which is in his possession, belonging to another, until certain demands of him, the person in possession, are satisfied." As examples of parties having this right, are common carriers, wharfingers, shipwrights, blacksmiths and other artificers, who are entitled to retain possession of the property, which they have, until some charge thereon shall be paid. The property is that in which the one having the lien, had no interest, previous to the existence of the lien. The plaintiff in this case owned the property, and by the sale did not transfer an unconditional title. Although there is a

manifest distinction, yet it is common to use the term *lien* in a more extended sense than by the definition quoted, and it is often applied to an interest similar to that which the plaintiff retained by his contract to the property in controversy; and we propose to examine the question on the ground, that the property in the logs, did pass to Haley unconditionally, subject to a lien created by the contract for the payment of the agreed price.

At the time of his contract, the plaintiff had the possession of the property by reason of his being the entire owner thereof. This possession continued after the execution of the contract, because by its terms possession was withheld from Haley. We assume, that the general property was in Haley, subject to a lien in favor of the plaintiff, arising from the contract, for the security of the purchase money. That lien was then perfect, and it must have so continued unless something occurred afterwards to defeat it. Possession in the plaintiff or the right thereto was necessary for the preservation of this lien. But such possession could have been constructive as well as actual, and what will amount to a possession sufficient for the continuance of a lien will depend upon the nature of the articles, and the intention of the parties. Standing trees or mill logs cannot be in such obvious personal possession as chattels of a less bulky and more portable description.

One may have a valid lien upon property while it is in the hands of the person, who pledged it; as if an innholder should have a horse for the purpose of being fed only, which he had before pledged to his creditor to secure a debt; or if a watchmaker deliver a watch as a pledge and afterwards receive it for the sole purpose of showing it to a friend, or to repair, in neither case is the lien extinguished; for the right of immediate possession is in the pledgee, and the possession of the pledger is that of the pledgee; it being parted with for a specific purpose, not inconsistent with the existence of the pledge. And it is immaterial, whether such qualified possession in the pledger is in obedience to the agreement made, when the pledge was given, or by a subsequent understanding

between the parties, provided there be no relinquishment of *that possession*, which perfected the lien.

In the case at bar, there is no evidence, that the plaintiff voluntarily relinquished the possession of the property or surrendered the lien, by any act or declaration, or by an omission to do any thing to preserve it after his contract with Haley; indeed there is no evidence of any communication between them. If the lien was lost, it was by some act of Haley authorized by that contract, for every thing done by him, excepting the agreement with the defendants, which it is not contended was in any wise with the plaintiff's consent, was according to the terms of the contract, the intention of the parties thereto, and the usual course of proceeding in relation to that species of property. The plaintiff could not have prevented Haley from cutting and removing the logs, without violating the contract. And any disposition of the property attempted by Haley, inconsistent with the agreement, could be legally forbidden by the plaintiff, who had in no way parted with that right, which he retained in the agreement of sale.

If the plaintiff had a lien on the trees, while standing, did it not attach to the logs, after they were cut and removed, when by the contract, by which they were sold and cut and removed, the possession was to remain in him as security for the payment of the stipulated price? If the acts of Haley, which were all authorized by the contract, discharged the claim or lien of the plaintiff, it involves the absurdity, that the contract created a perfect lien, and at the same time destroyed it.

The right of Haley to cut and remove the trees was not intended by the parties to the contract as a surrender of that possession, which the plaintiff was to hold for his security. The possession of Haley for the purpose of cutting, marking and taking off the timber, was the possession of the plaintiff, and it was in Haley to that extent, as the plaintiff's bailee. The property, in the change from trees to logs, did not lose its identity, and if the plaintiff held them in one shape for his security, so did he in the other. So far as Haley conducted

as it was contemplated in the contract, that he should do, he is presumed to have had the property according to its terms. An attempt to have held it in any other manner, would have been a wrong in him. He must be considered as having cut and taken away the timber without interfering with the plaintiff's possession, because he was to do all this, and the delivery was not to be made to him, till his liability was discharged.

Again, it is insisted, that as the defendants are *bona fide* purchasers, without notice of the plaintiff's right, *they* are entitled to hold the property unincumbered thereby. It was a maxim of the civil law "*Nemo plus juris in alium transferre potest, quam ipse habet.*" Lord Kaimes, in his Historical law tracts, title "History of property," vindicates this principle in the transfer of chattels and says, "in the progress of society, property acquired such stability and energy as to affect the subject wherever found, and to exclude even an honest purchaser, where the title of his vendor was discovered to be defective." This doctrine is fully sustained by the Courts in England, and in this country, where there is no fraud. In the case at bar, it is not pretended, that the plaintiff's rights are defeated or diminished by any fraud between him and Haley. The logs never vested absolutely in the purchaser, so that the plaintiff could not have asserted at any time a control over them. The contract was in every respect legal, and Haley's vendees could derive no title superior to his own.

If the defendants have been losers, it is attributable to their own neglect. The money due from them to Haley, when they had notice of the plaintiff's claim, was much more than sufficient to discharge it. They could have extinguished that claim, and by the authority of *Partridge* v. *Dartmouth College*, 5 N. H. R. 286, and other cases cited for the plaintiff, the same amount must have been allowed to them by Haley.

*Default must stand.*

WHITMAN C. J. remarked: that the bill of sale of the timber seemed to him, when taken together, to import a conditional sale. The condition not having been complied with, the plain-

tiff had a right to reclaim, and to maintain trover for it. The doctrine of liens is not applicable to such a case. Story on Agency, c. on liens. But the default may well stand, as the parties have agreed that such disposition shall be made of the cause as the Court may adjudge to be legal and just. But he could not assent to the reasoning in the opinion as applicable to the state of the case.