## Commonwealth *v.* Hess, Appellant.

## Commonwealth *v.* Ginader, Appellant.

[Marked to be reported.]

*Liquor Law—Bottler's license—Supplying customers outside the county.*

A person holding a bottler's license may sell to any retail dealer in any part of the commonwealth, provided the sales are made at the bottler's place of business in the county for which his license is granted.

Such sales may be made in the usual course of business. It is not necessary that the retail dealer from an adjoining county should call at the place of business of the licensee in order to make his purchase. He may order his goods by mail.

Delivery of the goods so ordered may be made by the seller, either by a common carrier or by his own wagons.

Defendant was in the habit of receiving orders at his place of business in Philadelphia, from week to week, for lager beer and porter, from licensed hotel keepers in Montgomery county. Upon the receipt of such orders, the materials so ordered were set apart and charged to the purchasers upon the books of the defendant, the sale in each instance being upon credit. The goods thus sold and set apart for the respective purchasers were then either loaded upon defendant's delivery wagon and de-

livered by the driver of said wagon to the purchaser in the usual course of business, or were shipped by rail to the purchaser.

*Held,* that defendant was not indictable in Montgomery county for selling liquor without a license.

### Sale of chattels—When title passes.

As between vendor and vendee, the passing of the title upon a sale of chattels depends upon the intention of the parties, to be derived from the contract and its circumstances. Actual delivery, weighing and setting aside are only circumstances from which the intention may be inferred.

The cases in which a sale has been held to be incomplete for want of a delivery to the vendee, are all cases in which the rights of creditors were considered. There is no case which holds that the sale is not complete between the parties, and that the title did not pass as to them merely because delivery was postponed. Where an apparent conflict exists between the cases, it is doubtless due to inadvertence in applying a principle of law which is only intended to protect execution creditors, bona fide purchasers, or the right of stoppage in transitu, to cases arising between vendor and vendee.

### Common law—Application of, to necessities and wants of business.

The courts are constantly applying the accepted principles of the common law to new phases and modes of doing business. This is a necessity alike dictated by common sense and the necessities of trade.

Argued Feb. 4, 1892. Appeals, Nos. 74 and 75, Jan. T., 1892, by defendants, Francis Hess and George Ginader, from judgments of Q. S. Montgomery Co., Oct. T., 1891, Nos. 52 and 50. Before PAXSON, C. J., GREEN, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Indictments for selling liquor without a license.

The facts and the charge of the court, SWARTZ, P. J., appear by the opinion of the Supreme Court. The defendants, though separately indicted, were tried together.

Verdict guilty and judgment thereon. Defendants appealed.

*Errors assigned* were (1) the charge of the court, quoting it; (2) entering judgment in favor of the commonwealth and against the defendants, upon the verdict returned under the agreed facts and the charge thereupon.

*N. H. Larzelere,* with him *M. M. Gibson,* for appellants.— The question is whether the liquor laws are to be interpreted in harmony with the natural laws of commerce and business, or contrary thereto. The distinction between wholesalers and retailers was clearly drawn in Pollard's Application, 24 W. N. C. 181.

These sales were complete in Philadelphia for every purpose, civil and criminal, save, perhaps, for the protection of creditors and innocent purchasers: 3 Am. & Eng. Enc. of Law, 844; Benjamin on Sales, 357, 329; Frazier v. Simmonds, 139 Mass. 535; Leonard v. Davis, 1 Black, 476; Story on Sales, 338 note; Dixon v. Yeates, 5 B. & Ad. 313, 340; Willis v. Willis, 6 Dana (Ky.) 48; Dows v. Morse, 17 N. W. R. 495; Newhall v. Langdon, 39 Ohio St. 87; Levasseur v. Carey, 3 Atl. 461; Garbracht v. Com., 96 Pa. 452; Stephens v. Gifford, 27 W. N. C. 30.

Actual delivery or actual change of possession are neither essential to pass the right of property and the right of possession, and when the latter concur, the contract as between the parties is executed. Even though the seller deliver where it is the custom and usage of trade, the title has passed regardless of such delivery: Benjamin on Sales, 336, 882.

Criminal statutes are to be construed strictly in those parts which are against defendants, but liberally in those which are in their favor. No persons can be made subject to such statutes by implication, and where doubts arise concerning their interpretation, such doubts are to weigh only in favor of the accused: State v. Bryant, 7 West. Rep. 748; U. S. v. Wiltberger, 5 Wheat. 76; Com. v. Fleming, 25 W. N. C. 126.

*B. E. Chain, Henry M. Brownback,* district attorney, with him, for appellee.—The sole question in this case is where did the sales of the liquors in question take place. This is not a new question in this state, and has been decided in several cases, both before and since the act of 1887: Garbracht v. Com., 96 Pa. 449; 1 Penny. 471; Stewart v. Com., 117 Pa. 378; Com. v. Fleming, 130 Pa. 156; Com. v. Holstine, 132 Pa. 357; Com. v. Greenfield, 121 Mass. 40.

A man may not make a common carrier of himself for the purpose of delivering his own liquors; nor can the purchaser constitute the seller a common carrier, or his agent, for the same purpose. The liquor remained in the possession of the appellants in Hess' own wagon, with other liquors they were then delivering to other customers, until they had been set down at the hotels of Cottman and Wilson. The general rule is that an executory contract of sale without delivery does not pass

the title: Lester v. McDowell, 18 Pa. 91; Winslow v. Leonard, 24 Pa. 14; Sneathen v. Grubb, 88 Pa. 147; Oil Co. v. Hughey, 56 Pa. 322; Fry v. Lucas, 29 Pa. 356; McCandlish v. Newman, 22 Pa. 460; Scott v. Wells, 6 W. & S. 357; Bigley v. Risher, 63 Pa. 152; Nicholson v. Taylor, 31 Pa. 128; Nesbit v. Burry, 25 Pa. 208; Story on Sales, sec. 296; Benjamin on Sales, 334.

When persons engage in the unlawful sales of liquor, they do so at their peril, and when they violate the law, it is not a question of intention: Com. v. Sellers, 130 Pa. 32: Com. v. Holstine, 132 Pa. 357; In re Carlson's License, 127 Pa. 330; Zinner v. Com., 22 W. N. C. 97.

The driver, Ginader, is equally guilty with the principal, Hess, having participated in the sales and delivery of the liquors: Com. v. Holstine, supra.

OPINION BY MR. CHIEF JUSTICE PAXSON, March 28, 1892:

The defendant was convicted in the court below of selling liquor without a license. The whole case is developed by the specification of error, which is as follows:

"The court erred in its charge to the jury upon the following facts in the case, the whole of which charge is specified as error, and which is as follows: 'Upon the uncontradicted facts as established by the commonwealth, and not denied by the defence, which are as follows: Francis Hess has a bottler's license in the city of Philadelphia, doing business at No. 2440 Mascher street, in said city; for some time within two years, and prior to June 1, 1891, Frank Cottman, a licensed hotel keeper at Jenkintown, Montgomery county, Pennsylvania, sent to Hess' place of business in Philadelphia, orders from week to week for lager beer and porter, the whole amount of said orders being about $175; that upon the receipt of said orders by Hess, the material ordered was set apart and charged to Cottman upon the books of Hess, and was then loaded upon Hess' delivery wagon, and by him and an employee, named George Ginader, driven to Jenkintown, in Montgomery county, and delivered to Cottman; bills were afterwards made out and sent to Cottman, who paid them either by checks sent to Philadelphia, or in cash paid in person at the place of business of Hess in Philadelphia, after the delivery was made to Cottman at his place of business.

"'A similar transaction took place between said Francis

Hess and George Ginader and Henry J. Wilson, a keeper of a licensed hotel at Hatboro, Montgomery county, on six to eight occasions in the months of April and May, 1891; there were also orders of Cottman and Wilson filled by shipment by railroad to Jenkintown and Hatboro; Hess had no license from the court of Montgomery county.'

"The court is respectfully asked to charge the jury that there were no violations of the liquor laws as set out in said bill of indictment, and the verdict of the jury must be not guilty.

"The Court: Gentleman of the jury, I cannot instruct you as requested. The defendant undertook to deliver by the wagon of Hess, and the sale was completed in this county. If you find the facts as set forth in the above request, I charge you that they show a violation of the liquor laws as set forth and charged in the bill of indictment.

"I instruct you, however, as requested, that you are the judges of the law as well as of the facts, under the advice and direction of the court. You are to look to the court for the best evidence of the law, just as you are to look to the witnesses for the best evidence of the facts."

It must be conceded at the outset that the defendant was pursuing a lawful business. It is not only expressly authorized by law, but he has paid a large sum of money for the privilege of carrying it on. It was not denied, and could not well be, under the act of assembly, and our decisions thereon, that he has a right to sell his liquors at wholesale, not only to customers in the city of Philadelphia, but throughout the state, and the country at large. It is well known that the business of wholesale dealers is not limited to any particular locality, but extends in many instances over many portions of the civilized world. In the case of wholesale dealers in liquor, they are restrained by the statute and the terms of their license to sales in the county in which their license was granted. It does not follow, however, and it is not the law, that their sales are limited to persons residing in said county. It is not denied, and it is settled law, that the defendant may sell to any retail dealer in any part of the commonwealth, provided the sales are made at his place of business in the county of Philadelphia. Such sales may be made in the usual course of business. It is

not necessary that a retail dealer from an adjoining county should call at the place of business of the wholesale dealer, in the county of Philadelphia, in order to make his purchase. He may order his goods by mail as in other cases. When the law licensed the wholesale dealer to carry on his business in the county of Philadelphia, it carried with it the authority to conduct it according to the usual mode of business, but it does not justify him in peddling his goods around in other counties and selling them there. So much was decided in Com. v. Holstine, 132 Pa. 357, where it was held that the driver in the employ of a bottler, having a license in Philadelphia county, who took orders in Montgomery county for liquors, which were subsequently loaded upon the defendant's wagon in Philadelphia, and delivered to the purchasers in Montgomery county by said driver, who collected the money therefor, was properly convicted and sentenced for selling liquors without license in Montgomery county. It was said in the opinion of the court: "This was clearly a sale and delivery in Montgomery county. The license held by Mr. Otto authorized him to sell in Philadelphia. He had a right to sell to any person in this commonwealth, provided the sale was made at his place of business: Com. v. Fleming, 130 Pa. 138. But he had no right to peddle his beer through other counties not covered by his license, and make sales there." We accordingly held that, as his employer was not protected by a license, the defendant was not protected.

In the case in hand, the defendant was not peddling his beer through Montgomery county. The driver of his wagon did not solicit orders in that county. The defendant delivered liquors only upon orders which had been received in the usual course of business at his place in Philadelphia. It was urged, however, that because the delivery in Montgomery county had been made by means of his own wagon, that it was a sale in said county, and a violation of the license law. The court below so held, and sentenced the defendant to pay a fine of $500, and to undergo an imprisonment in the Montgomery county prison for three months.

It appears from the conceded facts, that the defendant was in the habit of receiving orders at his place of business in Philadelphia, from week to week, for lager beer and porter from Frank Cottman, a licensed hotel keeper at Jenkintown, Montgomery

county, and from Harry J. Wilson, a licensed hotel keeper at Hatboro, in said county. Upon the receipt of such orders, the material so ordered was set apart and charged to the purchaser upon the books of the defendant, the sale in each instance being upon credit. The goods thus sold and set apart to the respective purchasers, were then either loaded upon defendant's delivery wagon, and delivered by the driver of said wagon to the purchaser, in the usual course of business, or were shipped by railroad to the purchaser.

It was conceded upon the argument that had the liquors in question been shipped by rail, or by any other common carrier, to the purchaser, it would have been a sale and delivery in Philadelphia, and not a violation of the license law. This is the doctrine of Commonwealth v. Fleming, supra, where it was held that, if a liquor dealer in Allegheny county receive an order for liquor to be shipped to the purchaser in Mercer county, C. O. D., and, in pursuance of the order, the liquor be delivered to a common carrier in Allegheny county, for transportation to the vendee, at the latter's expense, the delivery to the carrier is a delivery to the purchaser, in such a sense as to complete the sale in Allegheny county.

If we sustain the court below in this case, we are brought face to face with this proposition: that if a wholesale dealer in liquor receives an order from a customer in an adjoining county, and in pursuance of such order delivers the liquor to a common carrier for transportation, he is a law-abiding citizen; whereas, if he delivers the liquor in his own wagon, in the usual course of business, he is a criminal, and liable to both fine and imprisonment. If this be the law, it is certainly not the " perfection of reason." On the contrary, it is the climax of absurdity, and cannot fail to shock the common sense of every business man in the community.

The principle relied upon by the commonwealth, to sustain this conviction, is that the sale of liquor was not complete until its delivery in Montgomery county to the purchaser, and a large number of authorities were cited in support of this view. The pith of the argument upon this point, and the nature of the authorities cited, may be gathered from four lines of the printed argument on behalf of the commonwealth. They are as follows : " Had these goods been levied upon in virtue of a

creditor of Hess (defendant), could it be contended that they could not be sold under that execution? We can find no decision sustaining a contrary view." If we concede the soundness of this proposition, and that the authorities cited fully sustain it, it has no bearing upon the case. The question is not, whether there was such a sale and delivery as would pass the title as against the execution creditors of the defendant. The true question is, and it has been wholly overlooked in many of the cases, whether there was a sale and delivery as between the vendor and the vendee. Our books are full of cases in which the sale has been held to be incomplete, for want of a delivery to the vendee, as against creditors, but in no one of them has it ever been held that it was not good between the parties, and that the title did not pass as to them.

As before stated, when the defendant received the orders from his customer, the goods were set apart for the latter, and charged to him. Had the order been accompanied by the cash, and the goods thus set apart, no one would contend that the sale was not complete as between the parties. Can it make any possible difference, that the liquors were charged to the purchasers upon the books of the defendant? The giving of a credit was as effective in passing the title as the payment of the money when the order was given. The acceptance of the order, in either case, is effective to pass the title as between vendor and vendee. In such case, the vendee has the right of property with the right of possession. Under all the authorities the vendor acts as bailee, and not owner, in carrying or delivering the goods. This is the rule where the rights of creditors, or bona fide purchasers without notice, do not intervene. There is abundant authority for this principle. The general rule is, that it is the contract to sell a chattel, and not payment or delivery, which passes the property: Benjamin on Sales, 357. The rule that the contract of sale passes the property immediately, before payment or change of possession has been universally recognized in the United States: Id. 329. There may be a bargain and sale of goods sufficient to transfer the title, and thus to support an action for goods bargained and sold, without such transfer of delivery as will amount to a transfer of possession: Frazier v. Simmons, 139 Mass. 531. "When the terms of sale are agreed upon, and the bargain is struck, and everything

the seller has to do with the goods is complete, the contract of sale, says Chancellor KENT, becomes absolute as between the parties, without actual payment or delivery, and the property, and the risk of accident to the goods, vests in the buyer. He is entitled to the goods on payment or tender of the price, but not otherwise, when nothing is said at the sale, as to the time of delivery, or the terms of payment. But if the goods are sold on credit, and nothing is agreed upon as to the time of delivering the goods, the vendee is immediately entitled to the possession, and the right of property vests at once in him : " Leonard v. Davis, 1 Black, 476, citing 2d Kent's Com. 671 ; Bradeen v. Brooks, 22 Me. 470 ; Davis v. Moore, 13 Id. 427.

In Dixon v. Yates, 5 Barn. & Adol. 313, Baron PARKE lays down the rule as follows : " I take it to be clear that by the law of England the sale of a specific chattel passes the property in it without delivery. Where by the contract itself the vendor appropriates to the vendee a specific chattel, and the latter thereby agrees to take that specific chattel, and to pay the stipulated price, the parties are then in the same situation as they would be after a delivery of goods in pursuance of a general contract. The very appropriation of the chattel by the vendor, and the assent of the vendee to take the specific chattel, and to pay the price, is equivalent to his accepting possession. The effect of the contract, therefore, is to vest the property in the bargainee."

The same principle was recognized in Iowa, in Dows v. Morse, 17 N. W. R. 495, where it was held that, when, under a contract, corn was set apart in bins, and marked with the purchaser's name, there was a designation of the corn for the purchaser. In our own case of Garbracht v. Commonwealth, 96 Pa. 449, our brother STERRETT illustrates the principle thus : " For example, a merchant in New York orders goods from a Boston house, and they are consigned thence to him, either by a carrier of his own selection, or in the usual course of trade, the transaction is an executed Boston contract: 2 Parsons on Contracts, 586. The same principle is recognized in Shriver v. Pittsburgh, 16 P. F. Smith, 446 ; Finch v. Mansfield, 97 Mass. 89. In the former case the city of Pittsburgh was authorized to impose a tax ' upon all articles of trade and commerce sold in said city,' and the question was whether certain goods were sold

in the city. About one sixth of the gross sales of Shriver & Co., wholesale grocers, were made directly at their store in the city without the intervention of outside agents. The other five sixths were effected through agents employed for the purpose of procuring orders and making contracts of sale outside the city. These orders were transmitted to the firm, who filled them at their store in Pittsburgh, and consigned the goods to the purchasers by the most direct means of conveyance. Shriver & Co. contended that the sales, thus represented by the orders, were not made in the city, and hence they were not taxable on the amount so sold; but it was held by this court that the goods thus ordered through their agents, put up at their store and shipped thence to the customers, were sold in the city, and that the amount should be included in their account of sales returned for taxation."

Whether the title of personal property passes by a sale, depends upon the intent of the parties. Hence it was said by Mr. Benjamin, in his valuable treatise on Sales: "But the property passes at once on the sale, if such is the intent, though the seller is afterwards to make the delivery of the goods. Such intent may be expressly declared, or may be inferred from the circumstances. Thus in Lynch v. O'Donnell, 127 Mass. 311, the seller was licensed to sell liquor at his store only. Liquor was ordered by a dealer in another town, under a previous arrangement, whereby the seller agreed to deliver goods so ordered at the depot addressed. Having so delivered, the seller brought an action for the price. It was contested as an illegal sale, but it was in evidence that the seller expressly declared at the time of the contract, 'the sales are to be made at my store;' a verdict for the price was sustained."

In Terry v. Wheeler, 25 New York, 520, it was said, by SELDEN, J.: "No case has been referred to by counsel, nor have I discovered any, in which, when the article sold was perfectly identified and paid for, it was held that a stipulation of the seller to deliver at a particular place prevented the title from passing. When the sale appears to be absolute, the identity of the thing fixed and the price for it paid, I see no room for an inference that the property remains the seller's merely because he had engaged to transport it to a given point. I think, in such case, this property passes at the time of the con-

tract, and that in carrying it the seller acts as bailee, and not as owner." Where the sale has been made upon a credit, as in this case, the rule is the same. For, when sales are made upon credit, the property identified and separated, the "legal effect then is, that there has been an actual transfer of title, and an actual right of transfer of the bargain:" Benjamin on Sales, 882. It is settled law that a sale of personal property passes the title as between vendor and vendee, when such property has been designated and set apart by the former: Dennis v. Alexander, 3 Pa. 50. It was said by GIBSON, C. J., in Scott v. Wells, 6 W. & S., at page 357 : " Even where actual possession has not been taken, the ownership and risk pass by the contract, if nothing remains to be done to the property by the vendor (such as counting, measuring, weighing, or filling up) to ascertain the number, quantity or weight. Thus in Rugg v. Minett, 11 East, 210, turpentine had been sold at so much the hundred weight in casks, to be taken at the marked quantity, except two, out of which the others were to be filled up before delivery, and those two were to be sold as containing indefinite quantities. The buyer employed a person to do the filling, but before he completed it, the warehouse with its contents was destroyed by fire ; and it was held that the property in those filled up had passed to the buyers, because nothing remained to be done to them by the vendors." To the same point is Winslow v. Leonard, 24 Pa. 14, where it was said by LOWRIE, J. : " Where the lawful form of contracting is pursued, the vesting of the title always depends upon the intention of the parties, to be derived from the contract and its circumstances ; and actual delivery, weighing and setting aside the goods, are only circumstances from which the intention may be inferred as matter of fact: 15 Pick. 76 ; 20 Id. 230; 3 W. & S. 14. And this is the principle of numerous cases wherein the title has been held to vest even where there has been no measurement," citing 13 Pick, 175 ; 5 Met. 452; 5 Johns. 395 ; 1 East, 192 ; 2 B. & C. 540 ; 6 W. & S. 357 ; 6 Rand. 473 ; 1 Denio, 18 ; 4 C. B. R. 364. The learned justice also says that much of the confusion of ideas about the vesting of the title on a sale of personal property, arises from the misleading influence of unsuitable analogies. I have already referred to one of those unsuitable analogies. Justice LOWRIE thus refers to another: " The

class of cases which have tended most powerfully to embarrass this question are those wherein the real question was not, has the title vested in the vendee, but, has it so absolutely vested as to take away the lien of the vendor for unpaid purchase money, or his right to stop in transitu? Yet to this class belong most of the older cases, which are usually referred to as leading cases in the present question, though they have nothing to do with it; for it is very plain that the title may vest while the vendor has such remaining control over the goods as entitles him to arrest their full delivery in default of payment, or on the failure of the vendee." Gonser v. Smith, 115 Pa. 452, recognized and followed Winslow v. Lanier, and affirms the doctrine that the passing of the title upon a sale of chattels depends upon the intention of the parties to be derived from the contract, and its circumstances. And that actual delivery, weighing and setting aside, are only circumstances from which the intention may be inferred.

We might multiply authorities upon this point without limit, were it necessary. We do not think those cited are in serious conflict with any of our own cases. Where an apparent conflict exists, it is doubtless due to inadvertence in applying a principle of law, which was only intended to protect execution creditors, bona fide purchasers, or the right of stoppage in transitu. This principle, as before observed, has no application to cases arising between vendor and vendee. In applying the law to questions of this nature, we cannot wholly ignore the accepted principles of right and justice, nor can we, in considering contract relations, ignore the usages which the necessities and wants of business have practically made a part of them. This has sometimes been called the expansive property of the common law. If the great mass of legal principles, which has descended to us under the name of the common law, were composed only of iron-clad rules, it would be wholly unsuited to the present age and generation, and the great changes which have taken place, not only in the volume of business, but in the mode of conducting it. We are constantly applying the accepted principles of the common law to new phases and modes of doing business. This is a necessity, alike dictated by common sense and the necessities of trade. The present is a striking illustration of the wisdom of this rule. Both

the appellant, and his customer in Montgomery county, were engaged in a lawful business. The appellant had the right to sell, and his customer in Montgomery county had the right to buy, the liquor in question. To say that a man who may lawfully sell an article to another who may lawfully buy it cannot deliver the article sold by the usual course of business, is to assert a proposition that is absurd upon its face. It is not sustained by either authority or reason.

In this case the purchaser was licensed to retail the beer to his customers. The effect of this conviction, if sustained by this court, will be merely to compel the appellant to deliver his liquors by a common carrier, instead of by his own wagon in the usual course of trade. It cannot prevent sales, nor diminish the quantity of liquors sold and consumed. It imposes a burden upon the wholesale dealer, which is not imposed by the law, and is in violation of the usages of trade. We do not think the legislature intended, when it licensed the appellant as a wholesale dealer, to prohibit the delivery of goods sold by him, in the manner recognized in all other kinds of business. And especially ought we not to indulge in metaphysical hair splitting in the construction of a penal statute, and make men criminals by judicial construction who were not so in fact or intent.

We are of opinion that the learned judge below erred when he instructed the jury that the facts, as set forth in the specification of error, show a violation of the liquor laws of this commonwealth.

The judgment is reversed.

COMMONWEALTH v. GINADER, APPELLANT.

OPINION BY MR. CHIEF JUSTICE PAXSON, March 28, 1892:

This case is ruled by Commonwealth v. Hess, just decided. The defendant in this case was the driver of Hess' wagon, and delivered the ale and porter to Cottman, the purchaser, at Jenkintown. Having held that the sale in question was lawful, and that Hess had not violated the license laws, it follows logically that his driver had not.

Judgment reversed.