## James B. Shaw and Owen L. Broadbent, trading as Richard Kershaw & Company, Appellants, *v.* George M. Fleming.

*Contract—Broker—Evidence—Sale.*

In an action to recover the price of yarn alleged to have been sold by plaintiffs to defendant, defendant claimed that he was a mere broker in the transaction, and that the yarn had been bought for B. to whom it had been delivered. Plaintiffs' suit was based on an absolute sale of the yarn to defendant; the pleadings were adapted to it, and all the evidence submitted was offered and received for the purpose of establishing it. Defendant on cross-examination stated that after some of the yarn had been delivered to B. one of the plaintiffs asked him, (the defendant,) if he would guarantee the account, and that he replied that he would if the yarn was up to sample. *Held,* (1) that under the pleadings there could be no recovery upon a guaranty, if one existed; (2) that the important controlling question in the case was whether the defendant was a purchaser of the yarn; (3) that in determining whether the defendant was the purchaser of the yarn, it was proper for the jury to take into consideration bills rendered by the plaintiffs to the defendant and the latter's failure to make any objection to them, letters written by B. to defendant, and immediately forwarded by him to the plaintiffs, and interviews between plaintiffs and B. in regard to the quality of the yarn, and the loss to the latter in working it up.

Argued Jan. 8, 1896. Appeal, No. 324, Jan. T., 1895, by plaintiffs, from judgment of C. P. No. 2, Philadelphia County, March T., 1892, No. 796, on verdict for defendant. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit for goods sold and delivered. Before JENKINS, J.

The plaintiffs in their statement claimed to recover $5,424.14, being the value of five thousand pounds of worsted yarn alleged to have been sold and delivered to the defendant.

At the trial, defendant claimed that he was a mere broker in the transaction, and that the yarn was really sold to John W. Brook.

The court admitted under objection and exceptions letters written by Brook to Fleming, and immediately forwarded to the plaintiffs by the latter, and conversations between plaintiffs and

Brook in regard to the quality of the yarn, and the loss to the latter in working it up. [1]

The evidence showed that plaintiffs rendered bills to defendant from time to time for the yarn, and that he made no objection to the bills.

The court charged in part as follows:

The suit here is for yarn which the plaintiffs claim they sold to the defendant, and sold to the defendant upon his own account. That is the plaintiffs' claim; that the defendant bought the yarn and was to pay them for the yarn; in other words, the yarn as between them was his yarn when it left their place, and of course that being the foundation of their claim, unless that is sustained, their claim falls.

[Upon the other side, the defendant says: Yes, he bought that yarn, but not in the sense the plaintiffs are using the term, that he was acting as broker, that he took them an order, and told them that Mr. Brook wanted this yarn and asked them if they would sell it to Mr. Brook; that they agreed to sell it to Mr. Brook, and in the transaction he simply acted as broker. Gentlemen, as you will determine that question, that is as to whether or not in this transaction the defendant acted as broker, you will determine whether or not you find for the plaintiffs or defendant.] [2]

There has been a great contrariety of evidence, and it is only fair, as I said before, for you to consider that this transaction occurred seven years ago. Whatever conversation there was between Mr. Fleming and the plaintiffs in this case, was a conversation that occurred at a time prior to seven years ago. That is, I mean to say, that upon the basis of what Mr. Fleming says, he went there in the latter part of January and asked them to take this order. That would be over seven years ago. So that, in the nature of things, when you come to consider the testimony, you must not expect it to be so fresh in the minds of the witnesses as though it had been something which occurred a year ago or two years ago.

There seems to have been apparently, from the testimony in this case, some considerable litigation over this claim, and perhaps that is one reason for the recollection of the witnesses. Events might not have been fixed so clearly in their minds had there not been litigation. With that other litigation, however

you have nothing to do, except as you may find that such litigation may have impressed the matter upon the men's minds, and also as you may find in the course of the testimony here whether there has been an apparent contradiction between the testimony now and the testimony on the previous trial. You are to consider that in the light of the credibility of the witnesses, if you do find such a thing. I do not recollect myself that there has been any such thing in this case.

Gentlemen, the plaintiffs, to sustain their case, have put in evidence their book of original entries, and in that book the charges are made to Mr. Fleming. They have put in evidence the bills which they furnished to Mr. Fleming, from time to time, and they also say there was no special agreement to furnish three thousand or five thousand pounds of yarn. That is, so far as this transaction for which they are suing now, it is simply for the balance of goods that had been sold by them and not paid for. That is the position they take, that there was no change between this yarn relative to the previous yarn sold; that there was no special order for this yarn; that it was simply a running account between Mr. Fleming and them and that a certain amount of yarn was paid for, and this amount was not paid for.

[On the other side, however, Mr. Fleming tells you, that it is true yarn had been bought by him as broker for Mr. Brook, and they sent the yarn to Mr. Brook, but as to this yarn, all the yarn in suit, that yarn was agreed to be furnished by the plaintiffs to Mr. Brook, Mr. Fleming simply acting as broker, and the yarn was to be made according to a sample which Mr. Fleming says he took to the plaintiffs at the time that he said they accepted the order.] [2] Now you see it is impossible to have two things more diametrically opposite. In fact, they are diametrically opposite. They are as far apart as the poles. If one of these stories is true, the other necessarily must be false. That is as apparent as it is possible for anything to be, and it is upon the finding that you will make as to those two, which of the two you will find, that you will find your verdict. The evidence in the case, outside of the direct testimony as to that particular point, simply has been admitted for the purpose of throwing light upon what really was the contract between these people.

You have the testimony of Mr. Fleming that he having received letters of complaint from Mr. Brook and telegrams of complaint, at once took the letters and telegrams to the plaintiffs. You have his testimony, that he made an arrangement with one of the plaintiffs to go up and see Mr. Brook at the mill, at Pomeroy, and they went there. There seems to be no dispute in the testimony that both Mr. Shaw and Mr. Fleming went to the mill at Pomeroy. Mr. Shaw says he went there because Mr. Fleming wanted him to go there and press the payment of the bill, in his presence, from Mr. Brook. You are to say what credence you will give to that. If you recall it, that is all the reason Mr. Shaw gives for going up to Pomeroy. He went there, not to talk about yarn, not to talk about anything with regard to the contract, but simply to press Mr. Fleming, in the presence of Mr. Brook, for the payment of the bill. Now, I say, you will determine whether or not that is to be believed.

On the other hand, Mr. Fleming says he went there because he asked him to go to see about these complaints that Mr. Brook had made about the yarn, and when Mr. Shaw got to the mill, it seems, from all the evidence in the case, that his conversation was with Mr. Brook, and with Mr. Brook with regard to the yarn, as to whether or not the yarn had been such yarn as was to have been shipped.

Now, as to that conversation had that day, you are to consider it simply in the light as to whether or not it corroborates him in the position that the defendant has taken, that he was acting simply as a broker, or whether it corroborates Mr. Shaw, or the plaintiffs here, that Mr. Fleming was not a broker but an actual purchaser.

You have the testimony of Mr. Shaw that he went again and without Mr. Fleming, to this mill and again talked about the character of the yarn. You have the testimony of Mr. Brook, that at one of these conversations—and there may be some doubt, as to which one it was—Mr. Shaw told him to go on and weave the yarn, and whatever the loss, if there was a loss, he could make good. You have the testimony of Mr. Shaw that he did say at a conversation something to that effect, but you must understand that any loss that Mr. Brook sustained you cannot give to the defendant in this case an allowance for, because, if the contract was between Mr. Brook and the plaintiffs, then

that must be fought out in a case between the plaintiffs and Mr. Brook. If Mr. Brook was the actual purchaser of the yarn, that could be readily determined in a suit brought by the plaintiffs against Mr. Brook for the price of the yarn, or in such a suit as Mr. Brook says he has brought against the plaintiffs to recover damages. But so far as this case is concerned, that conversation is to be considered by you simply as throwing light upon the transaction as between Mr. Fleming and the plaintiffs. That is, does it go to corroborate Mr. Fleming to show Mr. Fleming was actually only a broker or does it go to show the other thing, that Mr. Fleming was the actual purchaser. I think from the plaintiffs' standpoint you will find some little difficulty to give a reason why Mr. Shaw went there on the other two occasions. Mr. Shaw does not show the reason he went there. One time, according to his own testimony, he took Mr. Thorp, the superintendent of his own mill, and went through that mill. Of course there must have been some reason for his going there, and when he did go there he talked about yarn, talked about the character of the yarn. Mr. Shaw says the yarn at that time had already been delivered. Mr. Fleming says when he first went there it had not all been delivered, but that there was some conversation, and that is corroborated by Mr. Osmond, who seems to have been the superintendent of the mill of Mr. Brook, also by Mr. Brook, that the yarn thereafter should be up to sample and that the yarn which had already been delivered and was in the looms was not up to sample. That, I say, is the testimony of Mr. Fleming, Mr. Osmond and Mr. Brook. Mr. Shaw does not directly deny that. Mr. Shaw does not recall exactly what he did say, but he does recollect there was something said about Brook going on and weaving the yarn, and if any loss could be shown under him he would make it good.

You see, therefore, that this case is really in a very narrow compass. It has taken us nearly three days to try it, and yet it is to be determined as you find the fact either one way or the other. [Was Mr. Fleming a broker, and in this transaction was he acting as a broker—was he acting as broker for the plaintiffs? Does he tell the truth when he tells you those bills are at four per cent? One I have before me says two per cent, ten days. He tells you that is the price which Mr. Brook was to pay for the yarn, and that when Mr. Brook paid, if Mr.

Brook did pay, he was to send his check to the plaintiffs and that he had a right to deduct two per cent for brokerage, and in the other transactions he had done that. He says he had sent them a statement to that effect, or sent them an account.] [5]

[There are four letters here, one of 11/20/86, and running from there down to 1/28/87 ; as I was saying to you, the defendant says, that from time to time he did take off the two per cent for brokerage and it was in making the settlement with the plaintiffs he deducted that. He said he sent them the amount of the bill less the four per cent.] [6]

Plaintiffs' points were among others as follows :

5. The thirteen bills rendered to Fleming from time to time, bearing upon their face " GEORGE M. FLEMING bought of RICH- ARD KERSHAW & Co., 2% ten days, and 4% ten days," meaning a discount for cash, show a sale and unobjected to become accounts stated, and as such binding upon the defendant for all that they contain, and the defendant is estopped from denying such sale. *Answer :* I refuse that point. I do not so charge you. You should consider those bills in considering the main question, which is as I have put it to you, Was Mr. Fleming a broker or was he a purchaser ? But I decline the point as presented. [7]

6. The statements rendered to the defendant, Fleming, from time to time, being on their face accounts for merchandise sold and a balance struck, were a demand for the money, and being unobjected to by the defendant became accounts stated and as such binding upon the defendant for all that they contained, and the defendant is estopped from denying that the transaction was a sale. *Answer :* I refuse that point. I do not so charge you ; but, as I said before, you may consider the facts stated in this point in considering the case, but you are not concluded by them. [8]

7. If the sale of the yarn in question was by the production of a sample, being prior to the act of April 13, 1887, it raised no implied warranty of the quality, strength, or twist of the yarn, or that it was fit for the particular purpose for which the defendant used it, but became a guaranty only that the yarn should be of the same kind as the sample, and be simply merchantable. *Answer :* I affirm that point.

12. Whether the yarn was sold to Fleming direct or whether it was consigned to Fleming upon a guaranteed account, the plaintiffs, Kershaw & Co., are entitled to recover the contract price, and if the yarn was not merchantable under the order, plaintiffs are still entitled to recover the market value of the yarn delivered, and the defendant must prove the value in the market with reasonable accuracy and liquidate his damages accordingly. *Answer :* Gentlemen, I refuse that point. On the question of the guarantee, the defendant, Mr. Fleming, testifies that he did at one time in the transaction offer to guarantee the account and said he would guarantee it. The plaintiffs, however, repudiate that and say no such conversation ever occurred. You can see, gentlemen, if Mr. Fleming did guarantee the account, his guarantee repudiates the idea of his having purchased it; if he was a purchaser he was liable, if he was a broker he might guarantee the account. He did say he guaranteed, but there is no action in this case upon the guarantee. The plaintiffs have not here sued on the guarantee, they have sued Mr. Fleming as purchaser, and they must stand or fall according to their position, and he cannot be held upon his guarantee in this action. If they wish to recover on the guarantee they should sue on that, and then other questions will arise for the jury's determination. Then the question would be before you as to whether or not Mr. Brook has a defense. All through the case we have pending, you are not considering whether or not Mr. Brook has a defense. That is to be considered in a contest between the plaintiffs and Mr. Brook, if there ever is one. When a man guarantees an account he guarantees the solvency of the purchaser; it is a secondary liability and not a primary liability. [9]

Defendant's point was, among others, as follows :

1. If you believe that Fleming acted only as a broker in the sale of the yarn, and that the sale of the yarn was made through him, acting only as a broker, there can be no recovery against him. *Answer :* I affirm that point. I have so charged you. [11]

Verdict and judgment for defendant. Plaintiffs appealed.

*Errors assigned* among others were, (1) ruling on evidence, quoting the bill of exceptions ; (2, 5, 6,) portions of charge, quoting them, accompanied by argumentative statements ; (3, 4) par-

aphrases of certain portions of the charge, not quoting them totidem verbis, as required by rule XXIII.; (7, 8, 9, 11) points and answers as above, quoting them, accompanied by argumentative statements, and extracts from the testimony.

*William S. Divine, Samuel B. Huey* with him, for appellants. —The court did not take the trouble to inquire whether the defendant bought or sold as a broker : Reichenbach v. Ruddach, 127 Pa. 564.

The statements rendered became accounts stated—and as such, binding upon the defendant for all the items and charges which they contain: Colket v. Ellis, 1 W. N. C. 246 ; Bevan v. Cullen, 7 Pa. 281 ; Avery v. Leach, 9 Hun, 106 ; Wiggins v. Burkham, 10 Wall. 129.

A consignment for a guaranteed account is, strictly speaking, not a guarantee at all, but an insurance whereby the agent takes the place of the buyer and insures the seller against loss : Benjamin on Sales, page 8 ; Nutter v. Wheeler, 2 Low. 346 : Fish v. Benedict, 74 N. Y. 613.

*George Bradford Carr*, for appellee.—The defendant, Fleming, never, at any time, by any act of his, ratified or affirmed the action of plaintiffs in sending him current bills of account: Guernsey v. Rexford, 63 N. Y. 61 ; Colket v. Ellis, 1 W. N. C. 246 ; Powell v. Pacific R. R., 65 Mo. 658 ; 4 Watts & Sergeant, 141 ; Brown v. Vandyke, 8 N. J. Eq. 795 ; Holbrook v. Wright, 24 Wend. (N. Y.) 169 ; Brown v. Brooks, 25 Pa. 210 ; Dale v. Young, 24 Pick. 252 ; Sturges v. Bank of Circleville, 11 Ohio, 189 ; Hall v. Farmer, 5 Denio, 487.

If there was a guarantee on the part of the defendant, there can be no recovery, because the original debt or obligation had already been incurred previous to the collateral undertaking, and there must be a new and distinct consideration to sustain it : Raband v. DeWolk, 1 Paine, 580 ; Uhler v. Farmers' Nat. Bank, 64 Pa. 406 ; Parker v. Barker, 2 Metcalf, 423.

In a sale of goods by description, where a buyer has not inspected them, there is, in addition to the condition precedent an implied warranty that they shall be salable and merchantable : Benjamin on Sales, 4th Am. ed. sec. 982 ; Hare on Contracts, 541 ; West Republic Mining Co. v. Jones & Laughlin, 108 Pa. 55 , Ogden v. Beatty, 137 Pa. 197.

OPINION BY MR. JUSTICE McCOLLUM, March 2, 1896 :

It is not necessary to consider separately the fifteen specifications of error filed in this case. When it was here before, Shaw v. Fleming, 143 Pa. 104, we held that as it was an action for the price of yarn sold and delivered, it was essential to a recovery by the plaintiffs that they prove a sale and delivery of the yarn in accordance with their claim. We also held that "the evidence of what passed between them and Brook respecting the quality of the yarn, and their responsibility to him for a loss, was admissible on the question whether Brook or Fleming was their vendee, but that it was not sufficient to relieve the latter from his obligation to pay for the yarn if he was the purchaser of it," and further that the loss Brook sustained by reason of the alleged inferior quality of the yarn was not available as a set-off in or defense to the action. It was because of the rulings of the learned court below, adverse to these views, that the judgment was reversed and a new trial was ordered. The case now comes to us on the appeal of the same parties from a judgment recovered on a trial in which the objectionable rulings referred to have no part. While the result on the first trial was the same as on the last, it may have been due on the former to either of the rulings that were adjudged to be erroneous, or to a finding by the jury that the defendant was not a purchaser of the yarn. It is reasonably certain however that the judgment now appealed from is based upon a finding in accord with the defendant's contention that the plaintiffs did not sell to him the yarn they delivered to Brook and for the price of which they brought this suit. The evidence to warrant such a finding was ample and the instructions in regard to it were impartial and clear. On the first trial as on the last the plaintiffs submitted a point to the effect that the bills they rendered to the defendant became, by his failure to object to them, accounts stated, and estopped him from denying that he was a purchaser of the yarn. The point was denied on both trials but in the last one the jury were instructed to consider the bills in determining the question whether Fleming was a purchaser or a broker in the transaction.

The plaintiffs appear to have thought on the last trial that they had discovered something in the testimony of the defendant which might authorize and support a verdict in their favor.

The substance of this testimony is that Fleming said on cross-examination that after some of the yarn had been delivered to Brook, Shaw asked him if he would guarantee the account, and that he replied that he would if the yarn was up to sample. In considering this conditional offer of guarantee it is well to note that from the time this litigation commenced until the present stage of it the plaintiffs have stubbornly persisted, and still persist, in claiming that they made an unconditional sale of the yarn to the defendant and that there was no conversation between them at any time in reference to a guaranty. Their suit is based on an absolute sale of the yarn to him, the pleadings are adapted to it, and all the evidence they have submitted was offered and received for the purpose of establishing it. Under the pleadings there could be no recovery upon a guaranty if one existed. The text-book and cases cited in aid of this branch of their contention afford no support to it, and the learned court below properly disposed of it.

The important and controlling question in the case was whether the defendant was a purchaser of the yarn. It was a question of fact determinable on due consideration of all the evidence pertinent to it. The bills rendered by the plaintiffs to the defendant and his failure to make any objection to them, the letters written by Brook to Fleming and immediately forwarded to the plaintiffs by the latter, the interviews between the plaintiffs and Brook in regard to the quality of the yarn and the loss to him in working it up, were all relevant to the question and proper matters for the jury to consider in deciding it. It was also exclusively for the jury to determine what credit should be given to the testimony of the witnesses respecting these and all other matters affecting the issues in the case.

The criticism of the charge in regard to matters not already specifically referred to requires no discussion. It appears to us as unwarranted and without merit. Our conclusion is that there is nothing in the instructions to the jury or in the rulings upon offers of evidence which furnishes any ground for reversing the judgment.

The specifications of error are overruled and the judgment is affirmed.